UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KELLY HODGES<br><br>VERSUS<br><br>PARKER TOWING COMPANY, INC. | CIVIL ACTION<br>NO. 2:19-CV-01736<br><br>SECTION "T"<br>JUDGE GREG G. GUIDRY<br><br>DIVISION 4<br>MAG. JUDGE KAREN WELLS ROBY |

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OR EVIDENCE OF SPECULATIVE EARNINGS**

**MAY IT PLEASE THE COURT:**

Defendant, Parker Towing Company, Inc. ("Parker Towing"), respectfully submits this Memorandum in Support of its Motion *in Limine* to Exclude Testimony or Evidence of Speculative Earnings.

**SUMMARY OF ARGUMENT**

This is a classic case of a seaman inflating his wage loss claim by contending that the lost income stream should be calculated based upon a job position that Plaintiff never occupied and based upon the "possibility" that Plaintiff might -- someday in the future -- be promoted to a higher paying position. The case law is clear -- a seaman must show that he was on track and took sufficient concrete steps to achieve the higher paying position such that he would have more likely than not obtained that position -- it cannot be based upon mere "possibility" and speculation. *See Lewis v. SEACOR Marine, Inc.*, C.A. No. 02-116, 2002 U.S. Dist. LEXIS 29401, at *1 (E.D. La. Oct. 23, 2002) (Engelhardt, J.); *Gilmore v. WWL-TV, Inc.*, C.A. No. 01-3606, 2002 U.S. Dist. LEXIS 24026 (E.D. La. Dec. 12, 2002).

Parker Towing seeks to exclude any and all speculative evidence or testimony that Plaintiff would have been promoted to a higher wage earning position within Parker Towing. Any such proposed evidence and testimony is purely speculative, improper, and should be excluded from the jury trial of this matter. Here, there exists absolutely no evidentiary basis to support a claim that Plaintiff's wages would have increased or that he would have been promoted.

Plaintiff, an entry-level deckhand, earned $123.03 per day at the time of his alleged unwitnessed accident. Yet, in an attempt to artificially inflate his alleged losses, Plaintiff intends to introduce evidence and testimony that he ***could have*** earned higher wages. Specifically, Plaintiff intends to introduce the report and testimony of G. Randolph Rice ("Rice"), an expert economist who calculated Plaintiff's alleged economic loss. In his report, Rice calculates Plaintiff's economic loss based upon a daily rate of pay of $156.00 at the time of the accident and an increase to $166.00 per day "effective 2/06/18."[1] The net effect artificially increases Plaintiff's past and future lost wages. Essentially, Plaintiff intends to introduce evidence that if he had not suffered his alleged injury, which is denied, he would have been promoted to a higher earning position within Parker Towing, thereby increasing his alleged future economic loss. Notwithstanding, there is simply no evidence that Plaintiff would have ever been promoted to a higher earning position and any such purported argument amounts to pure speculation -- such a promotion is neither automatic nor guaranteed.

The law is clear that when calculating lost wages, the calculation begins with the gross earnings of the injured party ***at the time of the accident***. *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir. 1983) (*en banc*) (hereinafter "*Culver II*"). Rice's calculations utilizing a speculative gross earnings base are unreliable, inadmissible, and violate the well-established principles of *Culver II*

[1] Exhibit A, Expert Report of G. Randolph Rice, at p. 1.

and its progeny. Accordingly, this Court should prohibit Rice from testifying at trial regarding his calculations based upon purely speculative earnings. Likewise, any testimony or evidence of speculative higher earnings is improper, irrelevant, would mislead the jury, unfairly prejudice Parker Towing, confuse the issues, and waste time. *See* FED. R. EVID. 401; 403. Accordingly, this Court should exclude any and all evidence of speculative higher earnings in its entirety from the trial of this matter.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Alleged Unwitnessed Incident

Plaintiff, Kelly Hodges alleges he sustained injuries in an accident occurring on December 6, 2017. Parker Towing employed Plaintiff as a deckhand aboard the M/V THELMA PARKER II (hereinafter "Vessel"), a tow boat owned and operated by Parker Towing. At the time of the alleged accident, the Vessel was stationary along the Black Warrior River in Alabama building tow with a total of seven (7) crewmembers aboard. Specifically, Plaintiff claims that while using a ratchet to let slack out of a tow wire by lengthening the ratchet, Plaintiff unspooled the ratchet arms too far causing the ratchet barrel to loosen, fall to the deck, and jerk Plaintiff's left shoulder forward.

After the alleged incident, Plaintiff reported his unwitnessed accident to his fellow crewmembers. Thereafter, an incident report was prepared and immediate arrangements were made to transport Plaintiff off the Vessel to seek medical attention. As a result of the unwitnessed accident, Plaintiff has made claims for, *inter alia*, pain and suffering, and past and future wage loss.[2] It is the computation of this future wage loss claim which is the subject of this Motion *in Limine*.

[2] *See* R. Doc. 1.

## II. Plaintiff's Prior Work History and Employment with Parker Towing

As noted above, at the time of the incident, Parker Towing employed Plaintiff as a deckhand. As a new or entry-level deckhand, Plaintiff earned $123.03 per day.[3] Plaintiff started his first hitch for Parker Towing in or around September 8, 2017. Prior to the alleged incident, Plaintiff had completed three full hitches on various vessels for Parker Towing.[4] Each hitch consisted of twenty (20) days on and ten (10) days off. By December 6, 2017, Plaintiff was approximately one week into his fourth hitch and had been working for Parker Towing for approximately three months.

Prior to his employment with Parker Towing, Plaintiff held a number of jobs in various industries. Plaintiff's prior employment consisted of working as: (1) a maintenance technician for a furniture store; (2) a structural welder for a shipbuilding company; (3) a snowmaker at a ski resort; (4) a salesman at Bass Pro Shops; (5) a food salesman at Zaxby's; and (6) a food salesman at Subway.[5] Plaintiff's employment with Parker Towing was his first foray into the maritime industry.

## III. Parker Towing's Training and Promotion Opportunities

Prior to a new or entry-level deckhand beginning a hitch with Parker Towing, new deckhands must participate in shoreside safety training and orientation. As part of this training, new deckhands receive a copy of Parker Towing's Employee Handbook and must agree to abide by Parker Towing's policies and procedures, including safety rules and guidelines. Likewise, they receive a copy of the Deckhand's Manual.[6] In addition, new deckhands review approximately sixteen (16) hours of safety and training videos prior to beginning their first hitch. Specifically,

---

[3] Exhibit B, Deposition of Kelly Hodges, at p. 44:13-15.
[4] *Id.*, at p. 43:8-10.
[5] *Id.*, at pp. 23:6 - 29:11.
[6] Exhibit C, Deposition of Ron Jesser, at pp. 35:4 - 36:1; Exhibit D, Deposition of Chris Bushhorn, at pp. 22:22 - 23:7.

new deckhands view a Deckhand Orientation & Injury Prevention Training video, a Safe Line Handling Practices video, and a Safe Manual Winch Practices and Procedures video. These videos provide instruction and training on daily tasks and responsibilities of a deckhand, including making and breaking tow, housekeeping, and a whole hosts of tasks.

In addition to this training, new deckhands receive on-the-job training from more senior crewmembers on the vessel.[7] Specifically, Parker Towing requires all new deckhands to work side-by-side with a more senior crewmember for the first six months of employment. During this six-month period, a new deckhand is taught how to safely perform daily tasks and works under the supervision of these crewmembers.

As relates to advancement, at the end of orientation and before beginning their first hitch, a new deckhand receives a "pre-qualification checklist," which lists specific responsibilities and tasks of which a deckhand must demonstrate proficiency, ***prior*** to being considered for a promotion from entry-level deckhand to second deckhand, a higher earning position.[8] The deckhand must personally maintain the checklist.[9] In order to advance to a second deckhand, the entry-level deckhand must exhibit this proficiency in all areas listed and must have either a wheelman or office management confirm this proficiency and sign off on the checklist.[10] Additionally, at the time of Plaintiff's alleged accident in December 2017, Parker Towing required all entry-level deckhands to complete at least six months (or six hitches) before they could even be considered for advancement to second deckhand.[11] In other words, even if a deckhand completed the checklist prior to six months, the deckhand would be ineligible for advancement to second deckhand, until

---

[7] Exhibit C, Deposition of Ron Jesser, at pp. 20:18 - 21:22; Exhibit D, Deposition of Chris Bushhorn, at pp. 40:16 - 41:43:18. Exhibit E, Deposition of Justin Hoffman, at pp. 17:5 - 18:20.
[8] Exhibit D, Deposition of Chris Bushhorn, at pp. 7:19 - 13:20.
[9] Exhibit D, Deposition of Chris Bushhorn, at pp. 11:21 - 13:5.
[10] *Id*. *See also* Exhibit C, Deposition of Ron Jesser, at pp. 16:15 - 18:12.
[11] Exhibit C, Deposition of Ron Jesser, at p. 15:8-20; Exhibit D, Deposition of Chris Bushhorn, at pp. 11:21 - 14:11.

he completed six months.[12] Moreover, a deckhand simply reaching six months did not guarantee a promotion to second deckhand. Rather, the deckhand had to demonstrate proficiency in all areas, which could take more than six months.[13]

To date, Plaintiff has neither produced nor offered his pre-qualification checklist (which Parker Towing required him to maintain) as evidence that he was proficient in the required areas. In fact, besides his own testimony, Plaintiff has offered absolutely no evidence that even if he had stayed with Parker Towing for six months, he would have been promoted. Plaintiff cannot rest his economic loss calculations on mere possibility and aspiration.

## IV. <u>Rice's Improper Economic Loss Calculations</u>

Plaintiff retained G. Randolph Rice ("Rice") to provide a calculation of Plaintiff's economic loss allegedly caused by his December 6, 2017 incident.[14] In calculating Plaintiff's economic losses, Rice begins with false figures regarding Plaintiff's daily rate of pay. Specifically, Rice notes that Plaintiff advised:

> Your correspondence advised that Mr. Hodges' work schedule was 22 days "on" followed by 11 days "off." Moreover, you noted that his daily rate of pay was $156.00 at the time of the accident ($37,960.00 per annum) but increased to $166.00 effective 2/06/18 ($40,393.33 per annum). We can readily deduct from these gross amounts the appropriate state (AL) and federal income taxes to produce the after-tax [15]
>
> counterparts. These latter data are used as the bases for making the calculations below.

As noted herein, Plaintiff's daily rate of pay was $123.03 ***not*** $156.00 or $166.00. In other words, Plaintiff instructed Rice to utilize a $33.00+ increase in Plaintiff's daily rate of pay with no

[12] Exhibit D, Deposition of Chris Bushhorn, at pp. 13:19 - 14:11.
[13] Exhibit F, Deposition of Tyler Dunegan, at p. 25:3-17.
[14] Exhibit A, Expert Report of G. Randolph Rice, at p. 1.
[15] *Id.*, at pp. 1-2.

explanation and no evidence of same. By utilizing these inflated rates of pay, Rice calculates that Plaintiff has sustained the following losses:

- $52,559.00 in past losses;[16]
- Assuming Plaintiff is unable to return to work, $1,117,569.00 in future losses;
- Assuming Plaintiff can return to work earning $10.75 per hour, $480,276.00 in future losses.

In sum, considering the fact that Plaintiff has returned to work, Rice calculates that Plaintiff's alleged total economic loss is $532,835.00. These calculations are stark in contrast to the calculations of Parker Towing's expert who, utilizing the proper pay rate of $123.03 per day, finds that Plaintiff has only suffered $48,583.00 in total losses.[17]

To support these incorrect and improper economic loss calculations, Plaintiff will argue at trial that, although he had only completed four hitches with Parker Towing, he ***would have*** stayed at Parker Towing but for his alleged unwitnessed accident. According to Plaintiff, he ***would have*** been (or was) proficient in all areas and ***would have*** been promoted to a second deckhand. Thereafter, Plaintiff claims he ***would have*** stayed with Parker Towing for the entirety of his career. Notwithstanding, Plaintiff's speculation and conjecture is no basis for an economic loss calculation. Aside from Plaintiff's self-serving testimony and "aspirations," there is simply no evidence that Plaintiff ***would have been*** promoted, that he demonstrated proficiency in all areas, or that he ***would have*** even stayed with Parker Towing. For these reasons, Rice's wage loss calculations are improper, unreliable, and should be excluded from the trial of this matter.

---

[16] Parker Towing notes that Plaintiff has not provided it with an updated economic loss report containing the properly calculated past losses in consideration of the new trial date of June 1, 2020.
[17] Exhibit G, Expert Report of John Theriot, at p. 4.

## LAW AND ARGUMENT

### I. *Daubert* Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of proffered expert testimony. Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006).

"The Supreme Court's landmark case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, provides the analytical framework for determining whether expert testimony is admissible under Rule 702 of the Federal Rules of Evidence." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002) (citing *Daubert*, 509 U.S. 579). Under *Daubert*, the Court acts as a gate-keeper and conducts a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).When the admissibility of expert testimony is challenged under *Daubert*, the proponent of the evidence bears the burden of proving that the testimony is both relevant and reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Mathis v. Exxon Corp.*, 302 F.3d 448, 460–61 (5th Cir. 2002) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). *See also Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). Here, Plaintiff bears the burden of establishing both relevancy and reliability.

## II. ***Culver II* and its progeny establish the proper calculation of lost wages.**

When properly plead and proven, under the General Maritime Law, a seaman may recover past lost earnings and for the loss of future earning capacity. In the seminal case of *Culver v. Slater Boat Co.* (hereinafter "*Culver II*"), the U.S. Fifth Circuit established the method for calculating lost wages in maritime cases. 722 F.2d 114 (5th Cir. 1983) (*en banc*). In *Culver II*, the Fifth Circuit fixed a four-step process for determining lost wages: (1) estimate the loss of work life or expected remaining work-like of the plaintiff; (2) calculate the lost income stream; (3) compute the total lost income stream; and (4) discount the total to present value. *Id.*, at 117. *See also Nelson v. Cooper T. Smith Stevedoring Co.*, C.A. No. 12-2890, 2013 U.S. Dist. LEXIS 123876 (E.D. La. Aug. 28, 2013) (Vance, J.). This is known as the "below-market-discount method."

When calculating lost wages, the calculation of the lost income stream "begins with the gross earnings of the injured party ***at the time of the injury***." *Id.*, at 117 (emphasis added). *See Martinez v. Offshore Specialty Fabricators, Inc.*, 481 F. App'x 942, 950 (5th Cir. 2012) (reaffirming that lost wages should be calculated based upon the plaintiff's gross earnings at the time of injury); *Hernandez v. M/V RAJAAN*, 841 F.2d 582, 587-88 (5th Cir. 1988) ("*Culver II* requires the court to use the plaintiff's gross earnings at the time of the injury."). Nonetheless, because the court "cannot ignore the reality of inflation," in *Culver II*, the court established the method by which to determine the effect of inflation on a seaman's future earnings. *Id*. at 118-122. In evaluating the issue, the Fifth Circuit definitively held that, absent a stipulation to the contrary, the method to be used in adjusting damage awards to account for inflation would be the below-market-discount method. The court explained:

> In the below-market-discount method, the fact-finder does not attempt to predict the wage increases the particular plaintiff would have received as a result of price inflation. Instead, the trier of fact estimates the wage increases the plaintiff would have received each year as a result of all factors other than inflation. The resulting

> income stream is discounted by a below-market discount rate. This discount rate represents the estimated market interest rate, adjusted for the effect of any income tax, and the offset by the estimated rate of general future price inflation.

*Id*. at 118 (emphasis added). *Culver II* makes clear that other evidence about the price of inflation is inadmissible. Nonetheless, the Fifth Circuit also explained that evidence concerning the likelihood that the earnings of an injured worker would increase "due to personal merit, increased experience and other individual and societal factors" can still be considered, ***if appropriate***. *Id*. at 122.

*Culver II* sought to prevent the average injury case from becoming a graduate seminar on economic forecasting by excluding from evidence earnings that are "so speculative that they cannot be accurately determined." *Id.* at 120. With respect to future earnings,"[t]he paramount concern of a court awarding damages for lost future earnings is to provide the victim with a sum of money that will, in fact, replace the money that he ***would have earned***." *Culver II*, at 120 (emphasis added.) Thus, courts "commonly exclude many relevant factors from consideration on the basis that they are ***so speculative*** that they cannot accurately be determined." *Id*. Likewise, "an award for damages cannot stand when the evidence to support it is speculative or purely conjectural." *Masinter v. Tenneco Oil Co.*, 929 F.2d 191, 194 (5th Cir. 1991). Accordingly, ***evidence of increases in earnings cannot be speculative***.

The Fifth Circuit recently addressed lost earnings in *Martinez v. Offshore Specialty Fabricators, Inc.*, 481 F. App'x 942 (5th Cir. 2012). In this case, a seaman allegedly suffered injuries while working as a mechanic aboard a derrick barge. *Id*. at 943. The seaman filed suit against his employer asserting claims under the Jones Act and General Maritime Law, including claims for loss of future earnings. At trial, the plaintiff presented evidence that he earned approximately $48,000 in the year preceding his injury, although his income for the five years preceding the alleged accident averaged only $5,673.60 per annum. *Id*. at 945.

After a bench trial, the district court found the Jones Act employer liable and used $48,000 as the annual income base to calculate the seaman's lost wages. *Id*. at 949. On appeal, the employer argued that the average of the seaman's wages over his entire work history, or some other period, should form the basis of the wage rate, asserting that this approach comports with the principle set forth in *Culver II*. *Id*. Analyzing the applicable law, the Fifth Circuit rejected the employer's contention holding that the "calculation of lost income 'begins with the gross earnings of the injured party ***at the time of the injury***.'" *Id*. (emphasis in original) (quoting *Culver II*). Of particular note, the Fifth Circuit reiterated "that awards for lost wages cannot be based on speculation or conjecture." *Id*. at 950. (citing *Hernandez v. M/V RAJAAN*, 841 F.2d 582, 587-88 (5th Cir. 1988)).

## III. Rice's calculations based upon speculative earnings should be excluded from the trial of this matter.

Taken together, *Culver II* and *Martinez* firmly establish that a seaman's earnings ***at the time of the injury*** must be utilized to calculate lost earnings. Moreover, the calculation of lost earnings may not be based upon purely speculative and conjectural evidence. It has become a recent trend in maritime law for an allegedly injured seaman to inflate his economic loss by contending that but for his injury, the seaman would have been promoted or would have went on to achieve higher earnings -- exactly what Plaintiff attempts to argue in this case. Nonetheless, as *Culver II* and its progeny dictate, any such speculation or theory must fail in the absence of sufficient concrete evidence. Evidence that is completely lacking in this case.

Despite the clear mandates of *Culver II*, Rice's calculations begin with pure speculation that Plaintiff earned $156.00 per day and that his wages would have increased to $166.00 per day. The end result artificially inflates Plaintiff's alleged economic loss by almost $500,000. These calculations clearly do not begin with Plaintiff's gross earnings ***at the time of the injury*** and amount to no more than a veiled attempt to increase the damages available in this case. As such,

on its face, Rice's report, testimony, and wage loss calculations violate the well-established principles of *Culver II*. Even further, there exists no evidentiary basis to support Rice's improper calculations, which amount to pure speculation and conjecture with regard to Plaintiff's possible wage increases.

Although evidence concerning the likelihood that the earnings of an injured worker would increase due to personal merit, increased experience and other individual and societal factors can be considered when increasing an injured worker's earnings base, Plaintiff must set forth sufficient evidence to show -- beyond mere speculation and conjecture -- that he would have achieved a wage increase each year. *Martinez v. Offshore Specialty Fabricators, Inc.*, 481 F. App'x 942, 949 (5th Cir. 2012) ("[A]n award for damages cannot stand when the evidence to support it is speculative or purely conjectural.") (internal citations omitted).

In *Lewis v. SEACOR Marine, Inc.*, the court granted a motion *in limine* to exclude any speculative testimony of "a possibility that the [seaman] might have been promoted to captain." C.A. No. 02-116, 2002 U.S. Dist. LEXIS 29401, at *1 (E.D. La. Oct. 23, 2002) (Engelhardt, J.). In this case, prior to his alleged accident, the seaman served as a deckhand aboard a vessel owned and operated by the defendant. The defendant hired the seaman as a deckhand on September 24, 2001 and two months later on or about November 5, 2001, the seaman suffered an injury to his back, shoulder, and arm when rough seas washed unsecured cargo to the aft deck and this cargo struck the seaman. *Id*. at *3.

In calculating his alleged economic loss, the seaman argued that his future lost earnings should be based upon a captain's salary. The defendant contended that any testimony relating to a captain's salary "is pure conjecture, excludable as rank speculation." *Id*. at *2. In response, the seaman contended that he attended a training school provided by the defendant and that he

"enjoyed his work as a deckhand the entire month preceding the accident." *Id*. at *2. In other words, the seaman simply claimed he aspired to become a captain.

Analyzing the facts and evidence, the court noted that there existed no evidence that the seaman took any "concrete steps" to becoming a captain, nor was there any evidence that the seaman descended from a long line of seafaring captains and that he "harbored dreams of attaining that position as a youth." *Id*. Moreover, the court focused on the fact that he had only worked as a deckhand for one month. Even further, the court particularly focused upon the seaman's prior work history. Prior to his employment in the maritime industry, the seaman worked in the following industries: (1) during high school he farmed and raised cattle; (2) from 1995 to 1997 he worked as a wood cutting machine operator at a lumbar yard; (3) from 1999 to 2000 he worked as a pool hall manager; and (4) between July and August 2001 he worked as an alternator tester. Considering the foregoing, the court found the seaman's "dabbling" in other industries belied any assertion that the seaman would have achieved the status of captain. *Id*. at *4.

Taking into account the seaman's short tenure with the defendant and his prior work history, the court concluded that earnings based upon a captain's salary without additional evidence of concrete steps constituted pure speculation and conjecture. The court explained:

> Although the case law makes it clear that absolute certainty is impossible, considerations of reliability and relevance require that any economic analysis be ensconced with some resemblance to reality. For any trier of fact to assume [the seaman] would remain gainfully employed in the maritime industry for the rest of his working life with rapid promotion and age increasing commensurate to captain's salary ignores the reality.

*Id*. at *5. The "possibility" of a captain's salary alone could not serve as a basis of recovery. "While certainty of proof is not required in civil cases, probability is, and less than that is unacceptably speculative." *Id*. at *6. Because any testimony or evidence of economic loss calculated by utilizing a captain's salary "would only foster jury confusion, waste trial time, and call for a verdict which

is simply not in the universe of rational awards based on the evidence of the [seaman's] work history," the court excluded such evidence from trial, including the testimony of Plaintiff's proposed economic expert. *Id*. at *6-7.

As noted herein, Parker Towing requires new deckhands to personally maintain a checklist which evidences their proficiency and determines their advancement to second deckhand. Plaintiff will attempt to argue he was near completing or had completed this checklist, ***yet he has not produced this checklist***. Rather, Plaintiff will rely on his own self-serving testimony of his hopes and aspirations as proof that he would have continued to work as a deckhand and that he demonstrated sufficient proficiency for advancement to second deckhand. Nonetheless, the law is clear -- Plaintiff's "aspirations" cannot serve as a foundation or basis for his alleged economic loss.

In *Gilmore v. WWL-TV, Inc.*, a New Orleans Saints' "Saintsation" sought economic damages based upon the earnings of a New York City ballerina. C.A. No. 01-3606, 2002 U.S. Dist. LEXIS 24026 (E.D. La. Dec. 12, 2002). She asserted that becoming a dancer was a lifelong dream and that the accident forming the basis of the litigation prevented her from achieving this dream. In rejecting this speculative argument, the district court explained:

> [P]ossibility alone cannot serve as the basis of recovery. While certainty of proof is not required in civil cases, probability is, and less than that is unacceptably speculative. The questioned projection would only foster jury confusion, waste trial time, and call for a verdict which is simply not in the universe of rational awards based on the evidence of the plaintiff's work history.

*Id*. at *9 (emphasis added). The plaintiff sought to introduce evidence and expert testimony that but for her injury she would have become a ballerina in New York City and earn a salary as one until the age of seventy. Nonetheless, "the evidence disclosed to the Court . . . provide[d] no reasonable basis for a loss of future earnings award based on the assumption that [plaintiff] would in fact become a professional dancer in New York and earn a salary doing so until age 70." *Id*. at

*10. "[A] plaintiff must present evidence (more than a simple assumption) that proves that a loss of earning capacity has, in fact, been sustained." *Id.* at *13. In excluding the evidence and testimony relating to a ballerina's earnings, the court explained:

> There is no suggestion or innuendo that the plaintiff was ever swayed by any offer to actually go to New York in pursuit of such a career, or took any concrete steps toward picking up roots and transplanting herself in the dance venue of New York City. There is no evidence that suggests that the plaintiff was ever compensated with a salary for either performing ballet/dance or teaching ballet/dance except for her experience working seasonally as a Saintsation. No matter how sincere, ***such aspiration alone*** does not provide a sufficient factual basis . . .

*Id.* at *16-17. (emphasis added).

*Lewis* and *Gilmore* are instructive and directly on point with this case. Here, it is undisputed that Plaintiff was allegedly injured while employed as an entry-level deckhand, not as a second deckhand or any other higher earning position. Significantly, there exists no evidence Plaintiff took any "concrete steps" to advancing to second deckhand, because Plaintiff has not produced (and apparently cannot) his pre-qualification checklist. Plaintiff's self-serving testimony that he was proficient or wanted to advance to a second deckhand is merely aspirational and not supported by the facts and evidence. Plaintiff's chance at becoming a second deckhand is barely even a possibility, must less a probability.

As noted herein, Plaintiff had only completed three full hitches prior to his incident on December 6, 2017 and was approximately a week into his fourth hitch when he allegedly injured his shoulder in an unwitnessed accident. As such, at the time of Plaintiff's accident, he was not even eligible for promotion to second deckhand, because he had not yet attained six months of employment. Moreover, besides his own testimony, there is simply no evidence that Plaintiff would have continued working for Parker Towing or would have advanced to second deckhand. In fact, statistically speaking, the odds overwhelmingly stack against Plaintiff. Parker Towing (and

similar maritime companies) suffer from a significantly high rate of turnover for new deckhands. In 2017, Parker Towing hired eighty-three (83) deckhands, including Plaintiff. Of those 83 deckhands, presently speaking, ***only thirteen*** remain.[18] Of those thirteen, three remaining deckhands had prior maritime experience.[19] Thus, even if Plaintiff had not suffered his accident, there is an 84% chance he would not have continued to work for Parker Towing. Moreover, just as in *Lewis*, Plaintiff's work history argues against a continued career with Parker Towing. As noted herein, prior to his employment with Parker Towing, Plaintiff held a number of jobs throughout the years and ***had no prior maritime experience***. Besides his own testimony, there is simply no indication or evidence that Plaintiff would have continued working as a deckhand.

Likewise, there exists no evidence that Plaintiff would have advanced or that he demonstrated sufficient proficiency to be promoted to second deckhand. The mere achievement of six months with Parker Towing does not automatically result in a promotion. Rather, the deckhand must demonstrate all the necessary skills prior to advancement, and, thus it may take a deckhand more than six months to complete his pre-qualification checklist. In fact, a fellow deckhand testified that it took him seven months to advance to second deckhand, because he had difficulty with tow wires.[20] As such, any allegation by Plaintiff that he would have achieved the rank of second deckhand after two additional months is undoubtedly speculation and conjecture. Likewise, the mere fact Plaintiff has claimed he did not know that the ratchets could come apart (which is denied) belies his own argument that he demonstrated sufficient proficiency for advancement.

Courts within the Eastern District consistently refuse to allow speculative evidence of higher earnings. *See Scardina v. Maersk Line, LTD,* C.A. No. 00-1512, 2002 U.S. Dist. LEXIS

---

[18] Exhibit C, Deposition of Ron Jesser, at pp. 63:15 - 66:19.
[19] *Id*.
[20] Exhibit F, Deposition of Tyler Dunegan, at p. 25:3-17.

13468, at *8-9 (E.D. La. July 15, 2002) (Livaudais, J.) (granting a motion *in limine* and excluding Rice from testifying to speculative and conjectural economic loss calculations at a jury trial); *Lomax v. Marquette Transp.*, C.A. No. 16-17825, 2019 U.S. Dist. LEXIS 941 (E.D. La. Jan. 3, 2019) (Milazzo, J.) (holding that "a finding that Plaintiff would have received a promotion to pilot is too speculative to support a higher award of lost wages and, instead [the court] base[d] Plaintiff's award of lost earnings on his salary as a tankerman."). *See also Mayne v. Omega Protein, Inc.*, 370 F. App'x 510, 517 (5th Cir. 2010) (finding that Rice's calculations based upon an assumption provided by the plaintiff's attorney with regard to annualized earnings were improper and amounted to speculation); *Pallis v. United States*, 369 F. App'x 538 (5th Cir. 2010) (affirming district court's decision refusing to consider speculative evidence of higher earnings based upon an advancement theory). Likewise, courts also refuse to even permit discovery of such information. In *Walker v. Pioneer Production Services*, the district court refused to allow a rigger to discover evidence of the compensation rates of an engineer, a higher earning position. C.A. No. 15-0645, 2016 U.S. Dist. LEXIS 42414 (E.D. La. Mar. 30, 2016). In this case, the plaintiff worked as a rigger and sought information relating to engineer compensation rates pursuant to discovery requests. The defendant objected and the plaintiff filed a motion to compel. In denying the motion to compel, the district court noted that the information sought was ***irrelevant***, because the plaintiff had nothing more than a "Letter of Recommendation" to support his claim for damages based on an engineer's earnings. This Letter of Recommendation documented the plaintiff's desire to become an engineer and detailed some of his training relating to engineer work. *Id.* at *5-6.

Nonetheless, in denying the motion to compel, the district court noted, "[t]his Court does not believe that expressing an interest, harboring an ambition, having designs to obtain training or being of sound body and mind," will, without more, "***ever be sufficient evidence to prove a claim***

***for loss of earnings capacity***." *Id*. at *14. (citing *Gilmore*, 2002 U.S. Dist. LEXIS 24026). Any such "aspirations" did not qualify as "concrete steps" required to justify deviation from the well-established rule of *Culver II* and *Martinez*. The court also recognized that allowing such rankly speculative evidence to come in through discovery would infect the entire proceeding by allowing irrelevant evidence to creep into lost earnings valuations. *Id.* at *10-11. *See e.g.*, *Goode v. Herman Miller*, 811 F.2d 866, 871 (5th Cir. 1988) (holding that under Louisiana law, mere proof something is possible is of little probative value as to an ultimate issue of fact, unless it can be established with reasonable certainty that all other alternatives are impossible); *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1137 (5th Cir. 1985) (holding that possibility alone cannot serve as the basis for recovery, for mere possibility does not satisfy the preponderance of the evidence standard).

The law is clear that the calculation of lost income begins with the gross earnings of the plaintiff ***at the time of the injury***. *Culver II*, at 117; *Martinez v. Offshore Specialty Fabricators, Inc*., 481 F. App'x 942, 950 (5th Cir. 2012). As such, Plaintiff's alleged economic loss, if any, should be calculated using his earnings at the time of the injury -- not speculative and conjectural higher earnings. Rice's wage loss calculations run afoul of this well-established mandate and should be excluded from the trial of this matter. *See Lawrence v. Great Lakes Dredge & Dock Co., LLC*, C.A. No. 17-9775, 2018 U.S. Dist. LEXIS 90722 (E.D. La. May 31, 2018) (Africk, J.) (excluding expert testimony on the basis that economist improperly calculated the Plaintiff's gross earnings). Furthermore, evidence or testimony regarding higher earnings at Parker Towing is simply irrelevant and should be excluded from the trial of this matter. As such, any and all evidence of speculative higher earnings should be excluded in its entirety from the trial of this matter.

Parker Towing also respectfully requests that Plaintiff not be afforded an opportunity to correct these glaring insufficiencies in Rice's report. Plaintiff has had over seven (7) months[21] to correct the improper calculations in Rice's report and has failed to do so. Likewise, Plaintiff's deadline to disclose expert reports has likewise passed.[22] *See* FED. R. CIV. P. 37(c)(1). *See also* *Adriatic Marine, LLC v. Harrington*, C.A. No. 19-2440, 2020 U.S. Dist. LEXIS 26514, at *17-18 (E.D. La. Feb. 13, 2020) (Vitter, J.) (declining to allow personal injury claimant to supplement or correct miscalculations and improper wage loss calculations contained in Rice's report).

## CONCLUSION

The law is clear that a mere "aspiration" without more concrete steps taken to make fulfillment of that aspiration "probable" is insufficient to calculate lost earnings using anything other than Plaintiff's wages at the time of the incident. Here, Plaintiff cannot produce any evidence that it was probable he would become a second deckhand or advance to any higher earning positions. Rather, the evidence overwhelmingly points to the contrary. As such, both *Culver II* and *Martinez* dictate that Plaintiff's earnings base must be and should be that of an entry-level deckhand earning $123.03 per day. Any other evidence and testimony to the contrary, including the proposed testimony of G. Randolph Rice, would be improperly based on rank speculation. Accordingly, Parker Towing respectfully requests that any and all testimony relating to speculative higher earnings be excluded from the trial of this matter.

---

[21] Plaintiff produced Rice's report to Parker Towing on or before the court-mandated deadline of September 5, 2019 [R. Doc. 16]. Plaintiff did not produce a supplemental or amended report to Parker Towing prior to the Court's new mandated deadline of March 2, 2020 [R. Doc. 44].

[22] R. Doc. 44.

Respectfully submitted,
JONES WALKER, L.L.P.

*/s/ C. Barrett Rice*

JEFFERSON R. TILLERY (#17831)
C. BARRETT RICE (#30034)
SARA B. KUEBEL (#38305)
201 St. Charles Avenue – 50th Floor
New Orleans, Louisiana 70170-5100
(504) 582-8238 Telephone
(504) 589-8238 Facsimile

***Attorneys for Defendant,***
***Parker Towing Company, Inc.***