UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KELLY HODGES | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 2:19-cv-01736 |
| | * | |
| PARKER TOWING COMPANY, INC. | * | SECT. T MAG. 4 |
| | * | JUDGE GREG G. GUIDRY |
| | * | MAG. KAREN WELLS ROBY |

**HODGES' OPPOSITION TO MOTION IN LIMINE TO EXCLUDE TESTIMONY AND EVIDENCE OF SPECULATIVE EARNINGS**

**MAY IT PLEASE THE COURT:**

Plaintiff, Kelly Hodges, files this opposition to Parker Towing's motion in limine which is styled as one to exclude testimony and evidence of speculative earnings.

SUMMARY OF ARGUMENT

The crux of Parker Towing's motion is simple and concise. Parker Towing claims Dr. Rice's lost wage calculations "have absolutely no evidentiary basis" and are "purely conjectural." The premise for these claims is that at the time of the injury Hodges was still considered a new employee and earning base wages for new deckhands. But Parker Towing acknowledges on page 1 of its memorandum, with citations to authority, a seaman may prove his lost income stream should be righty based on promotion he would likely receive. Hodges will testify at trial he completed the steps needed for promotion. In addition, the lead deckhand/engineer tasked with training Hodges testified in his deposition that he was "sure he [Hodges] had one of his papers signed off prior to this

[the incident]" that was needed for promotion. Further, the earnings information Dr. Rice used is derived from Parker Towing's human resources manager, Ron Jesser. Thus, the evidence at trial will show Dr. Rice's calculations are not speculative or conjectural, but instead are based on pay and positions Hodges likely would have obtained if he had not been injured.

AUTHORITIES AND ARGUMENT

When calculating wage loss damages, "it is assumed that if the injured party had not been disabled, he would have continued to work, and to receive wages at periodic intervals until retirement, disability, or death." Associated Terminals of St. Bernard, L.L.C. v. Potential Shipping HK Co. Ltd., 324 F.Supp.3d 808, 824 (E.D. La. 2018), citing Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 533 (1983). In the Fifth Circuit, "The base figure used to calculate future wage loss is the difference between what a person could have earned 'but for' the accident and what he is able to earn upon returning to in his partially disabled state." Masinter v. Tenneco Oil Co., 867 F.2d 892, 899 (5th Cir. 1989), modified on other grounds, 934 F.2d 67 (5th Cir 1991). Further, "Evidence about the likelihood that the earnings of an injured worker would increase due to personal merit, increased experience and other individual and societal factors is admissible to show lost future earnings." Culver v. Slater Boat Co., 722 F.2d 114, 122 (5th Cir. 1983).

At the time of his injury, Hodges was still considered a new entry level deckhand and he was earning the base pay at the time of $123.03 per day. But this was about to chance because Hodges was near the end of the training period and qualified for promotion. He will testify at trial his checklist (paperwork) for advancement was

completed or substantially completed. This is supported by the testimony of Parker Towing's lead deckhand/engineer, Justin Hoffman, who was responsible for training Hodges and who when questioned about Hodges' experience responded, "Was he even a green deckhand? I'm sure he had one of his papers signed off prior to this." (Exhibit 1, Justin Hoffman deposition at p.61). Parker Towing claims it is conjectural for Hodges to present evidence of the likely advancement and merit increase because he has not "produced" this referenced paper or checklist. However, this checklist remains in Parker Towing's possession and was never returned to him when he was removed from the vessel after his injury. In his deposition Hodges testified after he was injured Captain Jimmy Stewart told him they would get his "stuff" to him later. (Exhibit 2, Hodges deposition at p.66). Hodges will testify he received some of his personal affects but his completed checklist was among the items never returned to him.

Thus, based on the testimony of Hodges and Hoffman, the evidence at trial will show that Hodges had completed his papers for promotion to 2nd Deckhand. With the paperwork completed, Hodges has shown "he was on track and took sufficient concrete steps to achieve the higher paying position such that he would have more likely than not obtained that position." (quoting Parker Towing's memorandum at p.1) Indeed, Justin Hoffman, who was responsible for training Hodges believed that at the time of the injury Hodges had already advanced beyond trainee status. Based on Hoffman's deposition testimony and Hodges' expected trial testimony, Hodges' likely promotion is not speculative.

Parker Towing's human resources manager, Ron Jesser, testified that at the time of Hodges' injury 2nd Deckhand's pay was $151.79, but since the time of the injury the pay had gone up to $159.48 – Dr. Rice's based calculation is the mean of these two numbers and thus not speculative or conjectural.[1] (Exhibit 3, Ron Jesser deposition, pp. 49-53). Because the testimony at trial will show Hodges would likely have been promoted to top deckhand, Dr. Rice also used the daily rate of $166.00 in his calculations. This is consistent with Jesser's testimony where he confirmed at the time of the injury, Parker Towing paid top deckhands $166.00 per day. Now, however, the pay for top deckhands is $174.00 per day. (Exhibit 3, p.52). But Dr. Rice's calculations use a daily pay rate that is actually lower than what Hodges could have earned at Parker Towing if he had not been injured. Thus, contrary to Parker Towing's assertion at pages 6-7 of its memorandum, Dr. Rice uses pay rates with "no explanation and no evidence of same" the truth is the rates of pay and the evidence of those rates of pay were testified to by Ron Jesser, who was presented as one of Parker Towing's FRCP 30(b)(6) designees on the precise issue of pay rates for Parker Towing employees.

Hodges testified in his deposition and will testify at trial it was his intention to continue working at Parker Towing.[2] His completion of the required checklist shows he was proficient at deckhand's work, and this is supported by the testimony of Hoffman who believes Hodges had already completed his paperwork needed for promotion to the other deckhand grades. Further the evidence at trial will show that since his release to

[1] Parker Towing argues all of Hodges wage losses should be calculated using the daily rate of $123.03, but Jesser testified deckhand trainees' pay had risen to $140.00 per day.

return to limited duty work well over a year ago, Hodges immediately obtained suitable alternative employment and has remained at the same job ever since. This evidence will tend to show Hodges values employment longevity and is not likely to have jumped from career to career over the expanse of his work-life.

For these reasons, Hodges suggests the Court should deny Parker Towing's motion. Whether Hodges would receive the anticipated promotion and pay increases are issues the jury should decide. If the jury believes Hodges would receive promotions, then Dr. Rice's calculation are consistent with, if not a bit lower, than the wage earnings Parker Towing pays its present deckhands.

STEPHEN J. JOHNSON, ATTORNEY LLC

*/s/ Stephen J. Johnson*_______________________

STEPHEN J. JOHNSON (22439)
Attorney at Law
Post Office Box 3320
No. 1 Church Street
Houma, Louisiana 70361 / 70364
Telephone: (985) 868-9600
Facsimile: (985) 868-1254
Email: sjohnson@stephenjohnsonlaw.com
Attorneys for Plaintiff, Kelly Hodges

[2] In his deposition Hodges was questioned about whether the work at Parker Towing suited him, and he responded, "Oh, I loved it out there." (Exhibit 2, p.50).